IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NALANI KULUKULUALANI, | ) CIVIL NO. 14-00028 KSC |
| | ) |
| Plaintiff, | ) ORDER GRANTING DEFENDANTS' |
| | ) MOTION FOR SUMMARY |
| vs. | ) JUDGMENT AND DISMISSING |
| | ) PLAINTIFF'S STATE LAW |
| TORI RICHARD, LTD.; CHRIS | ) CLAIMS |
| LYNCH; JOHN DOES 1-10; JANE | ) |
| DOES 1-10; DOE PARTNERSHIPS | ) |
| 1-10; DOE CORPORATIONS 1- | ) |
| 10; ROE "NON-PROFIT" | ) |
| CORPORATIONS 1-10; AN D ROE | ) |
| GOVERNMENTAL ENTITIES 1-10, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
<u>JUDGMENT AND DISMISSING PLAINTIFF'S STATE LAW CLAIMS</u>

Before the Court is Defendants Tori Richard,

Ltd. ("Tori Richard") and Christopher Lynch's ("Lynch")

(collectively "Defendants") Motion for Summary

Judgment, filed May 6, 2015.  The Court finds this

matter suitable for disposition without a hearing

pursuant to Rule 7.2(d) of the Local Rules of Practice

for the U.S. District Court for the District of Hawaii.

After careful consideration of the parties'

submissions and the applicable law, the Court HEREBY

GRANTS Defendants' Motion and DISMISSES Plaintiff's

state law claims for the reasons set forth below.

BACKGROUND

I.  <u>Factual History</u>

This action arises out of Tori Richard's termination of Plaintiff on November 12, 2012.

On March 19, 2004, Tori Richard hired Plaintiff as a sales associate.  Defs.' Concise Statement of Facts ("CSF") at ¶ 1.  Tori Richard then transferred Plaintiff to its retail division in June 2004, and to the TRIA department in the fall of 2005.  <u>Id.</u> According to Tori Richard, Plaintiff's 2005 transfer was for the purpose of giving her an opportunity to succeed notwithstanding her manager, Caroline McKinney's ("McKinney") desire to terminate Plaintiff due to communication issues.  <u>Id.</u> at ¶ 2.  Plaintiff, on the other hand, attributes her transfer to an effort to protect her against retaliation from McKinney. Pl.'s Statement of Disputed Facts ("SDF") at ¶ 2.

Plaintiff represents that she did not receive any disciplinary memos between 2005 and 2012, but Tori Richard describes Plaintiff's tenure as replete with

2

poor communication skills and confrontational, condescending and demanding behavior, with particular difficulty beginning around June 2012. Pl.'s SDF at ¶ 5; Defs.' CSF at ¶ 5.

On June 7, 2012, Plaintiff and Lynch, the shipping manager, had a verbal exchange concerning shipping procedures. Defs.' CSF at ¶ 6. Plaintiff allegedly pushed to have merchandise shipped in contravention of proper procedure. Id. Plaintiff insists that the shipment could have been processed utilizing her procedure. Pl.'s SDF at ¶ 6. There are conflicting accounts of what occurred during the exchange, with Plaintiff claiming that Lynch confronted her at her desk, where he stood above her, yelled at her, and threw a pick ticket at her. Id. at ¶ 5. Lynch admits to visiting Plaintiff at her desk and raising his voice, but he claims to have simply dropped one or two pick tickets on her desk and reiterated proper shipping procedures. Defs.' CSF at ¶ 7; id., Decl. of Christopher Lynch ("Lynch Decl.") at ¶ 14.

In an ensuing exchange that day, Plaintiff purportedly visited the shipping department, where she confronted Lynch, accused him of not knowing his job, and stated that she knew more than he did. Defs.' CSF at ¶ 8. Plaintiff accuses Lynch of screaming at her and claims that she told him not to come to her desk, nor throw things at her. Pl.'s SDF at ¶ 7.

Lynch complained to his supervisor, Robert Karpowicz ("Karpowicz"), Vice President of Operations, and Jo Kerns ("Kerns"), Human Resources Director, about Plaintiff's conduct. Defs.' CSF at ¶ 9. Meanwhile, on June 8, 2012, Plaintiff sent an email to Kerns expressing that she felt harassed. Id. at ¶ 10.

Kerns responded by commencing an investigation into the events on June 7, 2012, and Plaintiff's complaint of harassment. Defs.' CSF at ¶ 11; Pl.'s Statement of Material Facts ("SMF") at ¶ 5. Plaintiff, Kerns, and Joshua Feldman ("Feldman"), Tori Richard's President and Chief Executive Officer, met on June 11, 2012. Defs.' CSF at ¶ 12. During the meeting, Feldman queried Plaintiff about her harassment claim.

Plaintiff responded that Lynch's late May/early June 2012 emails had a tone, which she characterized as defensive, demeaning, non-responsive, and inappropriate. Id. Plaintiff also reported that Lynch's emails to other employees, such as Plaintiff's supervisor, Sue Sanders, were friendlier and less abrupt. Id. at ¶ 13. At the meeting, Plaintiff never reported that she felt harassed by Lynch based on her gender. Id. at ¶ 14.

As part of the investigation, Kerns interviewed Sanders, who witnessed the confrontation between Plaintiff and Lynch at Plaintiff's desk. Pl.'s SMF at ¶ 5. Sanders reported that she heard Lynch throw something onto Plaintiff's desk, that both Plaintiff and Lynch were agitated with raised voices, and that Plaintiff had handled herself well. Id.

Although Plaintiff claims that Lynch was not disciplined, she and Lynch received disciplinary memos concerning their inappropriate behavior from Kerns on June 27, 2012, and July 9, 2012, respectively. Defs.'

CSF at ¶ 8, Exs. J & K.  With respect to Plaintiff,

Kerns concluded that 1) Plaintiff had made

condescending and disrespectful comments to Lynch;

2) Plaintiff made statements outside the scope of her

job; and 3) there was no basis of harassment from Lynch

based on the exchange of late May/early June 2012

emails.  Defs.' CSF at ¶ 17, Ex. J.  Kerns asked

Plaintiff to assume responsibility for her conduct.

Id.  On June 29, 2012, Sanders coached Plaintiff about

the incident and her communication and interpersonal

skills.  Id. at ¶ 18.

Lynch's disciplinary memo concluded that he

made condescending and unprofessional comments.  Id. at

¶ 19, Ex. K.  Lynch was asked to assume responsibility

for his conduct, to "walk the higher road" as a

manager, and to explain the rationale of policies to

others so they understand why Tori Richard does things.

Id.  Ultimately, Kerns concluded that Lynch was

unprofessional because he confronted Plaintiff with a

change in procedures and did not provide a rationale

for the change.  Pl.'s SMF at ¶ 6.  She also concluded
that it was unprofessional for Lynch to throw the pick
tickets.  <u>Id.</u>  Kerns additionally found that Plaintiff
and Lunch "acted inappropriately and unprofessionally
on June 7th.  In [Kerns'] opinion, both employees were
guilty of raising their voices, creating a scene, being
confrontational, disrespectful and rude.  However,
[Kerns] did not conclude that [Lynch] harassed
[Plaintiff] on that date or prior to that date."  Pl.'s
SMF at ¶ 7.

On September 4, 2012, there was an exchange
between Plaintiff and Gina Maran ("Maran"), a new
shipping clerk.  Maran reported to Kerns that Plaintiff
confronted her regarding shipping charges and a missing
pair of pants in a harsh manner that caused Maran to
cry.  Defs.' CSF at ¶ 20; Pl.'s SDF at ¶ 20.  Kerns met
with Plaintiff to discuss the exchange, but Plaintiff
did not want to proceed until Sanders could be present.
Defs.' CSF at ¶ 23; Pl.'s SDF at ¶ 23.  In response to
this incident, Karpowicz complained to Sanders about

Plaintiff's abusive behavior.  Defs.' CSF at ¶¶ 21-22.

A follow-up meeting occurred on September 22, 2012, with Plaintiff, Sanders, and Kerns.  During the meeting, Plaintiff was given the opportunity to clarify and/or correct statements she made during the September 4, 2012 meeting.  Defs.' CSF at ¶ 24.  Kerns concluded, based on the September 4, 2012 incident and June disciplinary memo, that the manner in which Plaintiff spoke to others was condescending and offensive and that there were recurring incidents of Plaintiff acting outside the scope of her job without going to the appropriate manager.  Id.  Kerns also claimed to have advised Plaintiff that Feldman was contemplating how to handle these ongoing problems.  Id.  Plaintiff denies receiving notification that Tori Richard was considering how to handle communication problems.  Pl.'s SDF at ¶ 24.

Another disagreement took place via email on October 16, 2012, between Plaintiff and Lynch, concerning the issuance of return authorizations.

Defs.' CSF at ¶ 25; Pl.'s SDF at ¶ 25.  Plaintiff was
so upset that she left work early.  Defs.' CSF at ¶ 26;
Pl.'s SDF at ¶ 26.  She did not inform Sanders or
Kerns, but asked Susan Morrison ("Morrison"), her
mother and a manager at Tori Richard, to inform Sanders
that she left early due to stress.  Id.

After leaving work, Plaintiff visited her
primary care physician, Dr. Wray Tsuzaki, and
complained of stress caused by ongoing harassment at
work.  Pl.'s SMF at ¶ 11.  Dr. Tsuzaki referred
Plaintiff to a psychologist and placed her off of work
until November 11, 2012, then on modified leave until
November 27, 2012.  Id. at ¶¶ 11, 13.

Kerns investigated this latest incident in the
days that followed, but was unable to speak to
Plaintiff, who was on leave.  Defs.' CSF at ¶ 27.  On
October 18, 2012, Kerns met with Morrison, who
reported, among other things, that Plaintiff felt Lynch
caused a hostile work environment.  Pl.'s SMF at ¶ 12.
Kerns also met with Lynch and Sanders as part of her

investigation.  Sanders indicated that she was unaware
of issues with return authorizations and that the
emails between Plaintiff and Lynch revealed an
operational change in processing returns.  Pl.'s SMF at
¶ 14.  Kerns found that the email did not create a
hostile work environment because Lynch had a rationale
for the operational change conveyed to Plaintiff.
Defs.' CSF at 28.

On October 30, 2012, Feldman, Sanders, Kerns,
and Tom Teson ("Teson"), Tori Richard's Chief Financial
Officer, met to discuss options if Plaintiff returned
to work.  <u>Id.</u> at ¶ 29.  Unable to find a viable option
for Plaintiff, they ultimately determined that she
would be terminated.  <u>Id.</u> at ¶ 30.

Upon her return to work on November 12, 2012,
Feldman terminated Plaintiff.  <u>Id.</u>; Pl.'s SMF at ¶ 15.

II. <u>Procedural History</u>

Plaintiff commenced this action on January 23,
2014, claiming that Defendants engaged in
discriminatory and willful and/or wanton conduct,

created a hostile work environment, and retaliated against her.  Compl. at ¶ 4.  Plaintiff asserts the following claims:  1) discrimination and hostile work environment; 2) intentional infliction of emotional distress ("IIED"); 3) negligent and/or reckless retention and/or hiring and/or supervision; 4) unlawful retention and/or retaliatory discharge; and 5) ratification, additional conduct, and punitive damages. The present Motion followed.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(a).  "A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex Corp. v.

Citrate, 477 U.S. 317, 323 (1986)); T.W. Elec. Serv.,
Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630
(9th Cir. 1987).  In a motion for summary judgment, the
court must view the facts in the light most favorable
to the nonmoving party.  State Farm Fire & Cas. Co. v.
Martin, 872 F.2d 319, 320 (9th Cir. 1989).

Once the moving party has met its burden of
demonstrating the absence of any genuine issue of
material fact, the nonmoving party must set forth
specific facts showing that there is a genuine issue
for trial.  T.W. Elec., 809 F.2d at 630; Fed. R. Civ.
P. 56(c).  The opposing party may not defeat a motion
for summary judgment in the absence of any significant
probative evidence tending to support its legal theory.
Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d
1551, 1558 (9th Cir. 1991).  The nonmoving party cannot
stand on its pleadings, nor can it simply assert that
it will be able to discredit the movant's evidence at
trial.  T.W. Elec., 809 F.2d at 630; Blue Ocean
Preservation Soc'y v. Watkins, 754 F. Supp. 1450, 1455

(D. Haw. 1991).

If the nonmoving party fails to assert specific facts, beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be entered. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 884 (1990); Fed. R. Civ. P. 56(e). There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case. Celotex, 477 U.S. at 322; Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994); Blue Ocean, 754 F. Supp. at 1455.

In considering a motion for summary judgment, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec., 809 F.2d at 631 (citing Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986)). Inferences must be

13

drawn in favor of the nonmoving party.  Id.  However,

when the opposing party offers no direct evidence of a

material fact, inferences may be drawn only if they are

reasonable in light of the other undisputed background

or contextual facts and if they are permissible under

the governing substantive law.  Id. at 631-32.  If the

factual context makes the opposing party's claim

implausible, that party must come forward with more

persuasive evidence than otherwise necessary to show

there is a genuine issue for trial.  Bator v. Hawaii,

39 F.3d 1021, 1026 (9th Cir. 1994) (citing Cal.

Architectural Bldg. Prods., Inc. v. Franciscan

Ceramics, 818 F.2d 1466, 1468 (9th Cir. 1987), cert.

denied, 484 U.S. 1006 (1988)).

## ANALYSIS

I.  Discrimination/Hostile Work Environment

Plaintiff alleges that Tori Richard's acts

and/or omissions constituted sex discrimination.  Title

VII prohibits employment discrimination based on "race,

color, religion, sex, or national origin."  42 U.S.C.

§ 2000e-2(a).[1]  An employee may show violations of Title VII by proving disparate treatment, a hostile work environment, or retaliation for protected activities.

As an initial matter, the Court addresses Defendants' argument that Tori Richard could terminate Plaintiff for any reason because she was an at-will employee.  Even though Plaintiff was an at-will employee, "[t]here is no 'at-will' defense to a federal discrimination complaint."  <u>Washington v. Lake Cnty., Ill.</u>, 969 F.2d 250, 256 (7th Cir. 1992), <u>abrogated on other grounds by</u> <u>McKennon v. Nashville Banner Pub. Co.</u>, 513 U.S. 352 (1995).  Therefore, the Motion will not be granted on this basis.

---

[1]  In the Complaint, Plaintiff also alleges discrimination/hostile work environment pursuant to 42 U.S.C. § 1981.  However, § 1981 is inapplicable because its application is limited to race discrimination.  <u>Runyon v. McCrary</u>, 427 U.S. 160, 168 (1976) (Section "1981 prohibits racial discrimination in the making and enforcement of private contracts").  Plaintiff's allegations are limited to sex/gender discrimination, not race discrimination, and do not involve the making or enforcement of a contract.  Indeed, Plaintiff concedes that she was an at-will employee.

The Court also addresses Defendants' contention that claims against Lynch should be dismissed because individual liability is not legally recognized. The Court agrees that claims against individuals are not cognizable under Title VII. <u>Miller v. Maxwell's Int'l Inc.</u>, 991 F.2d 583, 587 (9th Cir. 1993) (individual employees are not subject to liability under Title VII). Thus, to the extent Plaintiff's Title VII claims are asserted against Lynch individually, Lynch is entitled to summary judgment.

   A.   <u>Hostile Work Environment</u>

>    An employer is liable under Title VII for
>    conduct giving rise to a hostile
>    environment where the employee proves (1)
>    that he was subjected to verbal or
>    physical conduct of a harassing nature,
>    (2) that this conduct was unwelcome, and
>    (3) that the conduct was sufficiently
>    severe or pervasive to alter the
>    conditions of the victim's employment and
>    create an abusive working environment.

<u>Kortan v. Cal. Youth Authority</u>, 217 F.3d 1104, 1109-10 (9th Cir. 2000) (quoting <u>Pavon v. Swift Trans. Co., Inc.</u>, 192 F.3d 902, 908 (9th Cir. 1999)).

1.  <u>Severe or Pervasive</u>

In determining if an environment is so hostile as to violate Title VII, courts "consider whether, in light of 'all the circumstances,' the harassment is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" <u>McGinest v. GTE Serv. Corp.</u>, 360 F.3d 1103, 1112-13 (9th Cir. 2004) (citations omitted); <u>Brooks v. City of San Mateo</u>, 229 F.3d 917, 923 (9th Cir. 2000) ("We use a totality of the circumstances test to determine whether a plaintiff's allegations make out a colorable claim of hostile work environment."). Offending an employee "based on an isolated comment is not sufficient to create actionable harassment under Title VII," but the harassment need not cause psychological injury. <u>McGinest</u>, 360 F.3d at 1113 (citing <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21-22 (1993)). "It is enough 'if such hostile conduct pollutes the victim's workplace, making it more difficult for her to do her

job, to take pride in her work, and to desire to stay on in her position.'" Id. (quoting Steiner v. Showboat Operating Co., 25 F.3d 1459, 1463 (9th Cir. 1994)).

Plaintiffs must show that the work environment was both objectively and subjectively hostile. Brooks, 229 F.3d at 923; McGinest, 360 F.3d at 1113. To evaluate objective hostility, the court considers the following: "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id.; Brooks, 229 F.3d at 924. The perspective of the reasonable victim is assumed when assessing the objective portion of a plaintiff's claim. Brooks, 229 F.3d at 924 (citing Ellison v. Brady, 924 F.2d 872, 879 (9th Cir. 1991)).

Title VII is not a "general civility code." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not

amount to discriminatory changes in the 'terms and conditions of employment.'" Id. (internal citation omitted).

Viewing the evidence in the light most favorable to Plaintiff, and given the totality of the circumstances, she has failed to establish that Defendants' conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.

Plaintiff cites the following allegations against Lynch to support her hostile work environment claim:

1) He yelled at her on June 7, 2012 regarding a shipping issue and threw a paper at her, and displayed rage toward her later that day.

2) His subsequent communications were unprofessional and he yelled at Plaintiff.

3) He sent emails that were hostile.

4) Between June 2012 to October 2012, he frequently yelled at female employees, but not male employees.

5) He communicated with Plaintiff in a harassing and hostile manner on or around October 16, 2012, and told Plaintiff that "she didn't know what she was doing."

Compl. at ¶ 22.  In the Opposition, Plaintiff asserts

that Tori Richard created a hostile work environment by

allowing Lynch to block her from completing her duties.[2]

Notably, none of the allegations regarding

Lynch's conduct toward Plaintiff link his conduct to

gender-based animus.  Vasquez v. Cnty. of Los Angeles,

349 F.3d 634, 642 (9th Cir. 2003) ("To prevail on a

hostile workplace claim premised on either race or sex,

a plaintiff must show . . . that he was subjected to

verbal or physical conduct of a racial or sexual

nature.").  Plaintiff's conclusory allegations are

insufficient to establish that Lynch's conduct was

based on Plaintiff's gender.  Thorton v. City of St.

Helens, 425 F.3d 1158, 1167 (9th Cir. 2005) (holding

that "conclusory statements of bias do not carry the

nonmoving party's burden in opposition to a motion for

summary judgment"); Forsberg v. Pac. NW. Bell Tel. Co.,

-------

[2]  This assertion is contradicted by Plaintiff's
performance evaluations, which indicate that Plaintiff
was performing her duties, and by Plaintiff's argument
in connection with her disparate treatment claim that
she was satisfactorily performing her job.  Opp'n at 7-
8.

840 F.2d 1409, 1419 (9th Cir. 1988) ("[P]urely conclusory allegations of alleged discrimination, with no concrete, relevant particulars, will not bar summary judgment."). What is more, Plaintiff has failed to produce evidence demonstrating that a reasonable person would find her work environment hostile or abusive, as she must to sustain her claim. Indeed, Plaintiff's allegations, at most, evidence some degree of conflict between her and Lynch. However, the record is devoid of evidence to suggest that Plaintiff was subjected to ongoing and persistent harassment, or that Lynch targeted Plaintiff because she is female.[3]

---

[3] The emails even call into question Plaintiff's characterization of them as hostile and harassing. In response to an October 15, 2012 email from Plaintiff asking whether returns can be picked up at the same time as deliveries, Lynch responded: "Nalani, Get me an RA and we'll pick it up." Pl.'s SDF at ¶ 25, Ex. 13. When Plaintiff explained that she does not issue RA's until goods are returned, Lynch stated that "[w]e can't pick up goods without RA's." Id. Plaintiff then inquired about who handles RA's, to which Lynch responded:

> C/S. I spoke to Staci-Li and she said
> TRIA does their own RA's. This is why we
> need RA's. Not too long ago the drivers
> brought some goods back that weren't

The fact that Plaintiff believes that Lynch obstructed her from completing her duties does not, without more, create a hostile work environment. Additionally, other than her bare assertion that Tori Richard treated Lynch differently from her, there is no evidence to support a finding of hostile work

---

approved (more than once)[.] After a couple on [sic] incidences we had to establish the drivers are not to pick up any RA's [n]o matter what without the authorization. So I can't tell them no pickups w/o RA's except for TRIA. I don't know if Josh needs to approve your RA's but he does approve all of the others. So if Sue can approve the RA's that's fine but I need to give the drivers the approved paperwork.

Id. In another email exchange from late May/early June 2012, Plaintiff accused Lynch of being defensive and inappropriate. She advised Kerns that she felt harassed and found Lynch's responses unacceptable. Defs.' CSF at ¶ 10, Ex. L. However, Lynch's responses were as follows: 1) "No I can't do it by this Fri maybe next by Friday [sic]"; and 2) "I gave a maybe as you can see below[.] I can't count inventory until after Father's Day at the soonest[.] Preferably August when we inventory everything else." Id. Significantly, the foregoing email communications were purely work related and Lynch did not insult or attack Plaintiff, much less based on her gender.

environment.  Plaintiff's claim that Tori Richard treated her differently than Lynch when investigating Maran's harassment claim against her is unfounded and contradicted by the evidence.  Tori Richard conducted investigations in both instances and Plaintiff never received a disciplinary memo for the incident with Maran, whereas Lynch received a disciplinary memo for the June 7, 2012 incident.  Plaintiff cannot carry her burden by relying on conclusory statements of bias.

Even if Lynch's conduct could be construed as gender/sex-based, or Plaintiff had proffered evidence that Tori Richard's treatment of Lynch differed significantly from its treatment of her, the pertinent allegations are neither severe nor pervasive enough to alter the conditions of Plaintiff's employment.  There were only a few documented instances of purported conflict between Lynch and Plaintiff.  The most severe interaction was the June 7, 2012 incident, but both parties were agitated and raised their voices in the exchange.  And although Plaintiff claims that her

conflict with Lynch interfered with her work performance, the evidence she has presented suggests otherwise.  As mentioned in footnote 2, Plaintiff claims to have performed her job satisfactorily.

Simply put, none of the actions cited by Plaintiff, individually or collectively, support a finding of hostile work environment.  See, e.g., Kortan, 217 F.3d at 1111 (finding no hostile work environment where the supervisor called females "castrating bitches," "Madonnas," or "Regina" in front of the plaintiff on several occasions and directly called the plaintiff "Medea"); Vasquez, 307 F.3d at 893 (finding no hostile work environment when employee was told that he had "a typical Hispanic macho attitude," that he should work in the field because "Hispanics do good in the field" and where he was yelled at in front of others); Draper v. Coeur Rochester, Inc., 147 F.3d 1104, 1109 (9th Cir. 1988) (concluding that the defendant created a hostile work environment where the plaintiff's supervisor repeatedly made sexual remarks

about the plaintiff over a two-year period, referring
to her as "gorgeous" and "beautiful" instead of her
name, sharing his sexual fantasies and his desire to
have sex with her, commenting on her "ass", and asking
her over a loudspeaker if she needed assistance
changing her clothes); <u>Nichols v. Azteca Rest. Enters.,
Inc.</u>, 256 F.3d 864, 870 (9th Cir. 2001) (finding
hostile work environment where male employee of
restaurant was subjected to a relentless campaign of
insults, name-calling, vulgarities, and taunts of
"faggot" and "fucking female whore" by male co-workers
and supervisors at least one a week and often several
times a day).

In accordance with the foregoing, there is
no evidence that Plaintiff was subjected to severe or
pervasive conduct, much less any conduct based on her
gender. Insofar as Plaintiff has failed to establish
her prima facie case for a Title VII gender hostile
work environment claim, Tori Richard is entitled to
summary judgment as to said claim.

B.  Disparate Treatment

Although not expressly pled in the Complaint,
it appears that Plaintiff is alleging disparate
treatment based on her reliance on the McDonnell
Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) burden
shifting analysis.[4]  To establish disparate treatment
under Title VII, a plaintiff "must first establish a
prima facie case of discrimination by offering evidence
that 'give[s] rise to an inference of unlawful
discrimination.'"  E.E.O.C. v. Boeing Co., 577 F.3d
1044, 1049 (9th Cir. 2009) (quoting Tex. Dep't of Cmty.
Affairs v. Burdine, 450 U.S. 248, 253 (1981))
(alteration in original); Noyes v. Kelly Servs., 488
F.3d 1163, 1168 (9th Cir. 2007) (citing Chuang v. Univ.
of Cal. Davis, Bd. of Trustees, 225 F.3d 1115, 1123
(9th Cir. 2000)) ("In the summary judgment context, the
plaintiff bears the initial burden to establish a prima
facie case of disparate treatment.").

_____

[4]  Defendants also employed McDonnell Douglas in
their Reply.

A plaintiff may establish a prima facie case in one of two ways:  1) by satisfying the four-part test set forth in <u>McDonnell Douglas</u> or 2) "by providing direct evidence suggesting that the employment decision was based on an impermissible criterion."  <u>Boeing</u>, 577 F.3d at 1049 (citing <u>Cordova v. State Farm Ins. Cos.</u>, 124 F.3d 1145, 1148 (9th Cir. 1997)); <u>Metoyer v. Chassman</u>, 504 F.3d 919, 931 (9th Cir. 2007) (citation omitted) (some alterations in original) ("[W]hen responding to a summary judgment motion . . . [the plaintiff] may proceed by using the *McDonnell Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the employer].").  Direct evidence is "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption."  <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1221 (9th Cir. 1988) (internal quotation marks omitted) (alteration in original).

Here, Plaintiff has not provided direct or circumstantial evidence suggesting that the subject employment decisions were based on impermissible criterion. Aside from her personal belief that Tori Richard subjected her to unequal terms and conditions of employment based on her gender, Plaintiff has not proffered any competent evidence to suggest that the employment decisions she complains of were made because of her gender.

Because Plaintiff has not provided direct or circumstantial evidence that discriminatory reason(s) more likely than not motivated Tori Richard, the Court applies the <u>McDonnell Douglas</u> framework. To establish a prima facie case under <u>McDonnell Douglas</u>, Plaintiff must demonstrate that: (1) she belonged to a protected class; (2) she was qualified for her job; (3) she was subjected to an adverse employment action; and (4) similarly situated males received more favorable treatment. <u>Anthoine v. N. Cent. Counties Consortium</u>, 605 F.3d 740, 753 (9th Cir. 2010) (citing <u>Moran v.</u>

Selig, 447 F.3d 748, 753 (9th Cir. 2006)); McDonnell

Douglas, 411 U.S. at 802.  "The requisite degree of

proof necessary to establish a prima facie case for

Title VII . . . on summary judgment is minimal and does

not even need to rise to the level of preponderance of

the evidence."  Wallis v. J.R. Simplot Co., 26 F.3d

885, 889 (9th Cir. 1994) (citation omitted).  However,

a "plaintiff's failure to offer evidence establishing a

necessary element of his prima facie case will

ordinarily be fatal to his claim."  Lyons v. England,

307 F.3d 1092, 1113 (9th Cir. 2002).  Indeed, the

granting of summary judgment is proper when a plaintiff

fails to establish a prima facie case of

discrimination.  Moran, 447 F.3d at 753.

    If a plaintiff establishes a prima facie case,

the burden shifts to the defendant "to provide non-

discriminatory reasons for the adverse action."

Anthoine, 605 F.3d at 753 (citing Wallis, 26 F.3d at

889).  "Should the defendant carry its burden, the

burden then shifts back to the plaintiff to raise a

triable issue of fact that the defendant's proffered reason was a pretext for unlawful discrimination." Noyes v. Kelly Servs., 488 F.3d 1163, 1168 (9th Cir. 2007). Circumstantial evidence of pretext must be specific and substantial. Becerril v. Pima Cnty. Assessor's Office, 587 F.3d 1162, 1163 (9th Cir. 2009). "A plaintiff may not defeat a defendant's motion for summary judgment merely by denying the credibility of the defendant's proffered reason for the challenged employment action." Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1029 n.6 (9th Cir. 2006) (citation omitted).

Tori Richard does not dispute that Plaintiff is a member of a protected class, but challenges the remaining elements of a prima facie case of discrimination. Notwithstanding the low degree of proof required at the prima facie stage, the Court finds that Plaintiff has failed to establish a prima facie case of gender discrimination.

1.  <u>Plaintiff's Job Performance</u>

The parties dispute the sufficiency of
Plaintiff's job performance.  Plaintiff presents four
performance evaluations in support of her assertion
that she performed her job satisfactorily:  the period
June 27, 2006 to June 15, 2007; the period July 1, 2009
to June 30, 2010; the period July 2010 to July 2011;
and the period July 2011 to July 2012.[5]  Pl.'s SDF at
¶ 5, Exs. 4-7.  In all but the last evaluation,
Plaintiff received excellent and outstanding ratings.
The last evaluation, which covered the period during
which the incident between Lynch and Plaintiff
occurred, rated Plaintiff's interpersonal skills as
satisfactory.  <u>Id.</u> at ¶ 5, Ex. 7.  Sanders made the
following comments about Plaintiff's interpersonal
skills:

> There were a few incidents this year that
> were atypical of [Plaintiff's] demeanor in
> that she was condescending to a Manager.
> To her credit, she has been able to work

[5]  It is unclear why Plaintiff has not produced her
performance evaluations for the 2007 to 2008 and 2008
to 2009 periods.

and communicate with this person after the
confrontations despite saying that she
could in no way communicate with this
person.  She will sometimes stand her
ground at the expense of demeaning another
employee (no matter who they are).
However, I don't see it as habitual
behavior.  In the scheme of things, these
occurrences are very rare.  She will stand
her ground to get something done.  She
does need to work on being open new ways
of doing things and not resort to "this is
how it's always been done" [sic].

Id.

Defendants, meanwhile, present evidence
reflecting Plaintiff's history of communication
problems.  A March 24, 2005 document entitled "One on
One" identified multiple communication issues with
Plaintiff:  her communication skills did not meet the
expectations of her position; she engaged in
inappropriate communications that resulted in the
escalation of three separate incidents; she failed to
keep her manager in the loop; she did not receive
feedback or criticism without defensive behaviors; and
because she had difficulty accepting ownership of her
own mistakes, she was quick to blame others.  Defs.'

CSF at ¶ 5, Ex. C.  Plaintiff also received a

"Corrective Notice of Action" on April 22, 2005, for

ineffective communication.  Id. at ¶ 5, Ex. D.  The

notice stated that Plaintiff "has shown no improvement

on her communication efforts since she was issued her

one on one on March 27, 2005.  She does not communicate

with her manager which is impacting her effectiveness

and quality of work."  Id.

In addition to the foregoing, Plaintiff engaged

in inappropriately toned email discussions with

Feldman,[6] she received disciplinary memo as a result of

the incident with Lynch, and she was required to attend

performance coaching with Sanders.  Id. at ¶ 5, Exs. E,

J & S.  The performance coaching addressed Plaintiff's

confrontational, condescending, and demanding

tendencies, as well as her excessive detail/emailing

and actions outside the scope of her job.  Id. at ¶ 5,

Ex. S.  Defendants further cite the September 2012

---

[6]  After seeing the email exchange, Sanders told
Plaintiff that she had to talk to Sanders and that
Plaintiff should not be sending an email with such a
tone.  Defs.' CSF at ¶ 5, Ex. T.

incident with Maran and October 2012 email exchange regarding return authorizations with Lynch.

Finally, Karpowicz, Sanders, and Feldman all attested that Plaintiff had communication issues during her employment at Tori Richard.

Insofar as a conflict exists between the parties' evidence about whether Plaintiff was performing her job satisfactorily, the Court finds that there is a genuine issue of material fact with respect to Plaintiff's job performance.

> 2. <u>Adverse Employment Action</u>

Plaintiff claims that she suffered two adverse employment actions:  1) the reprimand she received in connection with the June 7, 2012 incident with Lynch (disciplinary memo and professional coaching) and 2) her termination.

The Ninth Circuit construes "adverse employment action" broadly and has found that "a wide array of disadvantageous changes in the workplace constitute adverse employment actions."  <u>Ray v. Henderson</u>, 217

F.3d 1234, 1240 (9th Cir. 2000); Lyons, 307 F.3d at
1118 ("Title VII does not limit its reach only to acts
that take the form of cognizable employment actions
such as discharge, transfer, or demotion.") (quotation
marks and citations omitted).  However, not every
employment decision amounts to an adverse employment
action.  Ray, 217 F.3d at 1240.  Instead, "an adverse
employment action is one that "'materially affect[s]
the compensation, terms, conditions, or privileges of .
. . employment.'"  Davis v. Team Elec. Co., 520 F.3d
1080, 1089 (9th Cir. 2008) (citations omitted)
(alteration in original) (assigning more, or more
burdensome, work responsibilities, is an adverse
employment action); Fonseca v. Sysco Food Servs. of
Ariz., Inc., 374 F.3d 840, 847 (9th Cir. 2004)
(identifying the following as adverse employment
actions:  receiving payment a couple of days late;
warning letter or negative review; transfers of job
duties; undeserved performance ratings); Lyons, 307
F.3d at 1113 (identifying denial of promotion as

adverse employment action); <u>Strother v. S. Cal.</u>
<u>Permanente Med. Group</u>, 79 F.3d 859, 869 (9th Cir. 1996)
(Being excluded from meetings, seminars, and positions
that would have made the employee eligible for salary
increases, and being given a more burdensome work
schedule, if proven, were sufficient to establish
adverse employment actions); <u>Little v. Windemere</u>
<u>Relocation, Inc.</u>, 301 F.3d 958, 970 (9th Cir. 2002)
(identifying termination as an adverse employment
action).

In the present case, because Plaintiff's
termination was clearly an adverse employment action,
the Court finds it unnecessary to address whether the
disciplinary memo and professional coaching constituted
adverse employment actions.

3.  <u>Treatment of Similarly Situated Male</u>
    <u>Employees</u>

Plaintiff asserts that she and Lynch were
similarly situated and that Tori Richard treated
Lynch more favorably than her.  To establish this
prong, Plaintiff must demonstrate that, at the least,

she is similarly situated to Lynch in all material respects.  Moran, 447 F.3d at 755 (citation omitted). "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct."  Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1157 (9th Cir 2010); Nicholson v. Hyannis Air Serv., Inc., 580 F.3d 1116, 1125 (9th Cir. 2009) (quoting Vasquez, 349 F.3d at 641) (quotations omitted) (alteration in original). Supervisory employees and lower level employees are generally deemed not to be similarly situated. Vasquez, 349 F.3d at 641.

Here, Plaintiff was a sales assistant in the TRIA department, while Lynch was the shipping department manager as of February 2012.  Lynch was responsible for managing 15-20 employees, ensuring shipment of merchandise to 11 retail stores and corporate customers, and coordinating and warranting the return of merchandise.  Defs.' CSF, Lynch Decl. at ¶¶ 1, 5-6.

Disregarding the significant differences

between her and Lynch's positions and responsibilities at Tori Richard, Plaintiff relies on an out of district case for the proposition that she and Lynch are similarly situated. <u>Bowden v. Potter</u>, 308 F. Supp. 2d 1108 (N.D. Cal. 2004). <u>Bowden</u> is not binding on this Court, but in any event, it does not support Plaintiff's contention.

Applying Ninth Circuit precedent, this Court focuses on whether Plaintiff and Lynch had similar jobs and displayed similar conduct. As already discussed, Plaintiff and Lynch did not have similar jobs. Moreover, while they may have exhibited similar conduct during their confrontation on June 7, 2012 - raised voices and agitation - they were treated similarly notwithstanding differences in their employment positions. Both were involved in the investigation that followed the incident and both received disciplinary memos, albeit non-identical memos. <u>Compare</u> Defs.' CSF, Ex. J <u>with</u> <u>id.</u>, Ex. K. Plaintiff was subjected to performance coaching with Sanders, and

while she accuses Tori Richard of imposing different disciplinary measures, she cites to notes that are from Lynch's performance coaching even though she continues to speculate that Lynch did not receive performance coaching.  Pl.'s SMF at ¶ 8, Ex. 23; Opp'n at 12.

Plaintiff's speculation is without basis and is contradicted by the evidence presented by Tori Richard. Karpowicz confirmed that he provided coaching to Lynch regarding the June 7, 2012 incident.  Defs.'s CSF, Decl. of Robert Karpowicz ("Karpowicz Decl.") at ¶ 11. Lynch also represented that he was disciplined and that he was interviewed and coached by Kerns and Karpowicz. Defs.' CSF, Lynch Decl. at ¶¶ 21-22.

Significantly, Plaintiff ignores the fact that any purported differences between Tori Richard's disciplinary responses could reasonably be attributed to her and Lynch's differing positions/status within the company.  Even <u>Bowden</u> acknowledges as much:

> The ultimate question that is informed by
> the similarly situated analysis is whether
> there is a basis for inferring
> discriminatory motive:  Does the purported

39

> purpose of the challenged action require
> similar treatment of the two employees or
> does it justify different treatment due to
> differences in their status or situation
> rather than race?  In the above examples,
> the fact that one employee is a supervisor
> or works in a different department is
> irrelevant to the purpose of the
> discipline.  In other situations, those
> differences may be relevant.  The issue of
> similarly situated status is therefore
> fact specific and defies a mechanical or
> formulaic approach.

Bowden, 308 F. Supp. 2d at 1117.  Unlike the examples

cited in Bowden where employees in different positions

can be deemed similarly situated, i.e. an employee on

an assembly line who physically assaults a co-worker is

similarly situated to a supervisor who engages in

similar conduct, this case presents a situation where a

sales assistant questioned the shipping manager about

shipping procedures and proceeded to argue with him

about the same.  In other words, the confrontation

between Lynch and Plaintiff was work related and

specifically concerned an issue within Lynch's purview.

Therefore, it is entirely distinguishable from those

situations where two employees in different positions

engage in an act bearing no relation to their position, such as theft or assault.

Based on the foregoing, the record is insufficient to allow the Court to conclude that Lynch was similarly situated to Plaintiff, or that Tori Richard treated Lynch more favorably.[7]  Accordingly, the Court finds that Plaintiff has failed to establish a prima facie case of gender discrimination.

Even assuming that Plaintiff could establish a prima facie case of gender discrimination, Tori Richard set forth a legitimate, non-discriminatory reason for terminating her employment:  she was no longer a good fit, recurring communication problems throughout her employment, her mid to late 2012 behavior, and her disinclination to learn from coaching efforts.[8]  Defs.' CSF at ¶ 33.  To survive summary

---

[7]  Plaintiff cites to incidents involving Lynch that occurred after her termination.  These incidents are irrelevant.

[8]  Feldman attested that he decided to terminate Plaintiff "based upon her history of communication problems, her inability to get along with her co-workers, and her unwillingness to learn from the

judgment, Plaintiff must therefore raise a triable issue of fact that Tori Richard's proffered reason was a pretext for unlawful discrimination. <u>Noyes</u>, 488 F.3d at 1168. As earlier noted, it is not enough for Plaintiff to merely deny the credibility of Tori Richard's proffered reason for her termination. <u>Cornwell</u>, 439 F.3d at 1029 n.6.

The evidence shows that Plaintiff 1) received two notifications in 2005 – a "One on One" and a "Corrective Notice of Action" – regarding her communication issues; 2) received a disciplinary memo for the June 7, 2012 incident; 3) engaged in inappropriately toned email discussions with Feldman; 4) underwent performance coaching as a result of the June 7, 2012 incident; 5) received a performance evaluation for the period July 2011 to July 2012 that

--------

coaching provided to her." Defs.' CSF, Decl. of Joshua Feldman ("Feldman Decl.") at ¶ 21. He "concluded that she was no longer a good fit with the Company and [he] believed her confrontational, condescending and demanding behaviors to be the primary cause of employee conflict which was disruptive to the overall harmony of the workplace." <u>Id.</u>

rated Plaintiff's interpersonal skills as satisfactory and commented about Plaintiff's interaction with Lynch; 6) had an altercation with Maran; and 7) had conflicts with Lynch via email in 2012. Defs.' CSF at ¶ 5, Exs. C-E, J & S; Pl.'s SDF at ¶ 5, Ex. 7. After discussing possible options for Plaintiff's future in the company, Feldman, Kerns, Sanders, and Teson concluded that she would be terminated. Defs.' CSF at ¶¶ 29-30.

The only evidence presented by Plaintiff in her attempt to establish pretext is her deposition testimony. Plaintiff baldly asserts that Tori Richard's proffered reasons for her termination were pretext for her discriminatory termination.

> A. If you're asking my belief, yes, I believe that I was being terminated because of the direct action of me speaking up for myself in regards to the issues that pertained or led up to me going onto workman's comp.
>
> Q. Did you believe you were being terminated for being a woman?
>
> A. Yes, I guess I did, in a sense.

Pl.'s SDF at ¶¶ 30, 33, Ex. 1 at 222:13-19.

Plaintiff's personal belief is not direct or specific and substantial circumstantial evidence of discriminatory motive. Schuler v. Chronicle Broadcasting Co., Inc., 793 F.2d 1010, 1011 (9th Cir. 1986) (a plaintiff's "subjective personal judgments do not raise a genuine issue of material fact"). She has produced no meaningful evidence indicating that Tori Richard's proffered explanation was false or that it harbored discriminatory animus towards her because she is female. Consequently, Tori Richard is entitled to summary judgment on Plaintiff's discrimination claim.

II.   Retaliation

Plaintiff also asserts a Title VII retaliation claim. Title VII makes it unlawful for an employer to retaliate against an employee on the basis of the employee's opposition to practices or actions prohibited by Title VII. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, Plaintiff must establish that she engaged in a protected activity, that Tori Richard subjected her to an adverse

employment action, and that there is a causal link between the two events.  <u>Davis v. Team Elec. Co.</u>, 520 F.3d 1080, 1093–94 (9th Cir. 2008); <u>Vasquez</u>, 349 F.3d at 646.  The <u>McDonnell Douglas</u> burden-shifting scheme set forth above applies to Plaintiff's retaliation claim.

A.  <u>Protected Activity</u>

Plaintiff identifies, as a protected activity, her statement to Sanders on June 29, 2012, during the performance coaching, that she believed she was being written up for standing up for herself and that if a man stood up to Lynch, he would not have been reprimanded.[9]  According to Plaintiff, this complaint to Sanders was the "but-for" cause of her termination, as she engaged in protected activity, while Lynch did not.  "Title VII's statutory 'opposition clause' prohibits an employer from retaliating against an applicant or

---

[9]  Curiously, during this same session, Plaintiff also expressed her belief that female managers at Tori Richard - Morrison and Karen MacRae - were treated more favorably by Lynch than her.  Pl.'s SMF, Ex. 24.

employee 'because he has opposed any practice made an unlawful employment practice,'" such as discrimination based on race, gender, religion, or national origin. E.E.O.C. v. Luce, Forward, Hamilton & Scripps, 303 F.3d 994, 1005 (9th Cir. 2002) (citation omitted).

"Protected activity includes the filing of a charge or a complaint, or providing testimony regarding an employer's alleged unlawful practices, as well as engaging in other activity intended to 'oppose[ ]' an employer's discriminatory practices." Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1197 (9th Cir. 2003) (alteration in original) (quoting 42 U.S.C. § 2000e-3(a)). A complaint about an isolated incident, to which a plaintiff has been subjected, "does not constitute a protected activity unless a reasonable person would believe that the isolated incident violated Title VII." E.E.O.C. v. Go Daddy Software, Inc., 581 F.3d 951, 963 (9th Cir. 2009). A plaintiff's failure to raise a genuine dispute of material fact as to engagement in a protected activity

is sufficient ground for granting summary judgment.

Klat v. Mitchell Repair Info. Co., 528 F. App'x. 733 (9th Cir.), cert. dismissed, 134 S. Ct. 625 (2013).

The Court finds that Plaintiff's complaint to Sanders that a male would not be reprimanded for the same conduct she engaged in constitutes a protected activity, as it was a complaint raised with Sanders that she was being discriminated against based on her gender. Passantino v. Johnson & Johnson Consumer Prods., 212 F.3d 493, 506 (9th Cir. 2000) (finding that informal complaints to a supervisor constitute protected activity).

B.  Adverse Action

Plaintiff also satisfies the second prong of the test because she was terminated.

C.  Causal Link Between Protected Activity and Termination

Although Plaintiff satisfies the first two prongs, she has failed to create a genuine issue of fact that Tori Richard's decision to terminate her was made because of her comment to Sanders during the

performance coaching session.  "Title VII retaliation claims must be proved according to traditional principles of but-for causation[, which] requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  <u>Univ. of Texas Sw. Med. Ctr. v. Nassar</u>, 133 S. Ct. 2517, 2533 (2013).

"To show the requisite causal link, the plaintiff must present evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action."  <u>Cohen v. Fred Meyer, Inc.</u>, 686 F.2d 793, 796 (9th Cir. 1982).  "The causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and adverse action."  <u>Dawson v. Entek Int'l</u>, 630 F.3d 928, 936 (9th Cir. 2011) (citing <u>Jordan v. Clark</u>, 847 F.2d 1368, 1376 (9th Cir. 1988)); <u>see</u> <u>also</u> <u>Passantino</u>, 212 F.3d at 507 ("[W]hen adverse employment decisions are taken within a reasonable period of time

after complaints of discrimination have been made, retaliatory intent may be inferred.").

Causation can in some cases "be inferred from timing alone where an adverse employment action follows on the heels of protected activity." <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1065 (9th Cir. 2002). Inferences have been made for time periods ranging from 42 days to three months. <u>Id.</u> (citations omitted). Here, Plaintiff was terminated over four months after she engaged in protected activity.[10] Four months has been found to be too long to support an inference of retaliation. <u>Id.</u> (citing <u>Filipovic v. K & R Express Sys., Inc.</u>, 176 F.3d 390, 398-99 (7th Cir. 1999); <u>Conner v. Schnuck Markets, Inc</u>., 121 F.3d 1390, 1395 (10th Cir. 1997)). Given the more than four month lag between the subject protected activity and her termination, the Court cannot infer causation based on timing alone. Plaintiff must "rely on additional

_____

[10] It is of no consequence that Feldman may have contemplated termination prior to November 12, 2012, because the adverse employment action was the termination.

evidence beyond mere temporal proximity to establish causation." Conner, 121 F.3d at 1395.

Plaintiff has failed to present additional evidence sufficient to raise the inference that her protected activity was the likely reason for her termination. She cites only her performance evaluations as evidence of causation, but disregards the evidence relied upon by Tori Richard in support of its decision to terminate Plaintiff. Viewing the facts in the light most favorable to Plaintiff, the Court finds that there is no genuine issue of material fact as to causation. Therefore, Tori Richard is entitled to summary judgment as to Plaintiff's retaliation claim.

Assuming, *arguendo*, that Plaintiff established a prima facie case of retaliation, Tori Richard is nevertheless entitled to summary judgment because it set forth a legitimate, non-retaliatory reason for terminating Plaintiff. For the reasons discussed with respect to Plaintiff's discrimination claim, Plaintiff

has not produced evidence demonstrating that Tori

Richard's proffered reason for Plaintiff's termination

was a pretext for retaliation.

III.   Punitive Damages

Plaintiff seeks punitive damages pursuant to 42

U.S.C. § 1981a.   Inasmuch as the Court has granted

summary judgment as to Plaintiff's Title VII and § 1981

claims, there is no basis for an award of punitive

damages pursuant to § 1981a.[11]   The Court thus grants

summary judgment with respect to Count V, to the extent

Plaintiff seeks punitive damages pursuant to

§ 1981a.

IV.   Remaining Claims

Plaintiff's remaining claims - IIED; negligent

retention and negligent supervision;[12] and ratification

---

[11]   In any event, Section 1981a does not provide
Plaintiff with an independent cause of action.
Ogundele v. Girl Scouts-Arizona Cactus Pine Council,
Inc., No. CV-10-1013-PHX-GMS, 2011 WL 1770784, at *3
n.2 (D. Ariz. May 10, 2011); Huckabay v. Moore, 142
F.3d 233, 241 (5th Cir. 1998).

[12]   Plaintiff concedes that her negligent hiring
claim should be dismissed.

- are all state law claims.  Given the granting of summary judgment as to the federal claims, the Court has at most supplemental jurisdiction over the state law claims.[13]

Under 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction [.]"  "[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'"  <u>City of Chicago v. Int'l Coll. of Surgeons</u>, 522 U.S. 156, 173 (1997) (quoting <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 (1988)); <u>Acri v. Varian Assocs., Inc.</u>, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc).

---

[13]  There is no basis for diversity jurisdiction because Plaintiff and Defendants are citizens of Hawaii.

Because state courts have the primary responsibility for developing and applying state law, the "values of judicial economy, convenience, fairness and comity" do not favor retaining jurisdiction in this case. Acri, 114 F.3d at 1001 (providing that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors will . . . point toward declining to exercise jurisdiction over the remaining state-law claims" (quoting Carnegie-Mellon Univ., 484 U.S. at 350 n.7)). The Court therefore declines to continue exercising supplemental jurisdiction over Plaintiff's remaining state law claims.[14]

---

[14] 28 U.S.C. § 1367(d) provides that

> The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

28 U.S.C. § 1367(d).

## CONCLUSION

Based on the foregoing, the Court HEREBY GRANTS Defendants' Motion for Summary Judgment, filed May 6, 2015. The Court grants summary judgment with respect to Counts I (Title VII discrimination/hostile work environment), IV (Title VII retaliation), and V (to the extent it seeks punitive damages pursuant to § 1981a). The Court DISMISSES Counts II (IIED), III (negligent hiring/supervision/retention), and V (ratification).

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 30, 2015.



_____
Kevin S.C. Chang
United States Magistrate Judge

KULUKULUALANI V. TORI RICHARD, LTD., ET AL.; CIVIL NO. 14-00028 KSC; ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING PLAINTIFF'S STATE LAW CLAIMS

54